UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SALVATORE RIZZO,

         Plaintiff,    **MEMORANDUM OF**
                 **DECISION AND ORDER**
    -against-        08-CV-3219 (ADS)

MICHAEL J. ASTRUE,
Commissioner of Social Security

         Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Fusco, Brandenstein & Rada, P.C.**
Attorneys for the Plaintiff
180 Froehlich Farm Boulevard
Woodbury, NY 11797-0307
  By: John E. Antonowicz, Esq., Of Counsel

**Benton J. Campbell, United States Attorney, Eastern District of New York**
Attorney for the Defendant
610 Federal Plaza
Central Islip, New York 11722
  By: Vincent Lipari, Assistant United States Attorney

**SPATT, District Judge**

Salvatore Rizzo ("Rizzo" or "the Plaintiff") commenced this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), challenging a final determination by the Commissioner of Social Security ("the Commissioner") that he was ineligible for benefits. Currently before the Court are cross-motions for judgment on the pleadings by the Commissioner and the Plaintiff pursuant to FED. R. CIV. P. 12(c). For the reasons discussed below, the Commissioner's cross-motion for judgment on the pleadings is granted.

# I. BACKGROUND

## A. Procedural History

On March 10, 2005, Rizzo filed an application for social security disability benefits, alleging a disability and inability to work since February 2, 2004, due to thoracic and cervical spinal derangements, right shoulder pain, and abdominal hernias. His application and request for reconsideration were both denied and a timely request for a hearing before an Administrative Law Judge ("ALJ") was made on July 23, 2005.

On July 12, 2007, a hearing was held before ALJ Andrew Weiss ("ALJ Weiss"). Following the hearing, in a decision dated August 22, 2007, ALJ Weiss denied Rizzo's claim for disability benefits. The Appeals Council denied Rizzo's request for review on June 26, 2008, making ALJ Weiss's decision the final decision of the Commissioner. Rizzo commenced this civil action on February 5, 2009.

## B. The Record

### 1. The Plaintiff's Background and Testimony

Rizzo was born on February 3, 1972, and was 33 years old at the time he filed his claim for benefits. He has a high school diploma and was working as an auto mechanic for Northport Ford, a car dealership, when he sustained the injury that forms the basis of his claim. His employment required him to use machinery in the course of fixing cars. At the hearing before ALJ Weiss, Rizzo testified that he injured his thoracic and cervical spine, and his right shoulder, when a machine he was using to perform a "pull and flush" on a car exploded, forcing him back against a cart.

The Plaintiff sought medical treatment from St. Catharine's of Siena Medical Center

emergency room on the date of the accident.  No fractures were noted, he was given muscle relaxants and discharged.  After a visit with Dr. Joseph White, the Plaintiff's family practitioner, he was ordered to begin a physical therapy regimen.  In addition, the Plaintiff began treatment with Dr. Michael Sauter, a neurologist, for his back pain.  Although Dr. Sauter cleared the Plaintiff to return to work on April 11, 2005, he was never able to do so.  At no time since the date of the Plaintiff's injury has he been employed.

The Plaintiff testified that after the injury to his back he has suffered radiating pain in his arms and legs which prevents him from being able to work in any capacity.  In addition, prior to his accident the Plaintiff had a history of suffering from hernias, which he continues to experience.  The Plaintiff stated that he is incapable of standing or sitting upright for any extended period of time without having to switch positions, and cannot carry more than ten pounds at any given time.  He further stated that as a result of his back pain, he has trouble sleeping, and often gets no more than a few hours of sleep each night.  The Plaintiff testified that he has been approved for and receives Workers' Compensation benefits.

### 2. Relevant Medical Evidence

#### a. Joseph White, M.D. - Family Doctor

Dr. White met with Rizzo shortly after his discharge from St. Catharine's, and ordered him to begin physical therapy on February 18, 2004.  (R.132-34).  Dr. White is Rizzo's primary care physician, and treats him for his hypertension and routine medical conditions.  Id.

#### b. Gerard D'Ariano, M.D. - Spine Specialist

Dr. D'Ariano examined Rizzo on February 20, 2004, to review his claims of left-sided neck pain, and right-sided shoulder pain.  Dr. D'Arian diagnosed an acute cervical and shoulder

3

strain, and possible right arm radiculopathy. (R.114). He recommended an MRI and a neurological evaluation. (R.115).

### c. Michael Sauter, M.D. - Neurologist

Rizzo sought treatment from Dr. Sauter for upper back and neck pain from February 23, 2004 through April 2005. (R.268-76). In a written report, Dr. Sauter noted that Rizzo demonstrated a limited range of motion in his neck by 10-20%, but that he had a full range of motion in his back. (R.269). Dr. Sauter also found that Rizzo had a hyperextension injury to his neck, a mild concussion with post concussion symptomatology, cervical sprain/strain, and cervical radiculopathy on the right side. Id. He recommended that Rizzo receive physical therapy treatments. (R.270).

Dr. Sauter also completed a medical questionnaire on March 31, 2005, opining that Rizzo could sit for up to six hours over an eight hour work day, stand/walk for up to six hours over an eight hour work day and lift 10-20 pounds. (R.257). He also noted that Rizzo could return to work on April 11, 2005, and that he had no work-related restrictions. (R.264-65). Dr. Sauter's last date of treatment with Rizzo was April 29, 2005. (R.254).

### d. Shafi Wani, M.D. - Neurologist

Dr. Wani treated Rizzo for complaints of back, neck, and shoulder pain from May 2005 through June 2007. (R.295-335). His diagnosis was chronic cervical and dorsolumbar pain, cervical and lumbar radiculopathy, post traumatic myofascial pain, and dysfunction syndrome. (R.297). Dr. Wani performed an EMG that demonstrated a left C6-7 radiculopathy. (R.298). He also reported that an MRI scan of Rizzo's cervical spine on June 14, 2005 revealed disc herniations at the C4-C6 levels. However, he noted that MRI scans of Rizzo's thoracic and

4

lumbar spine were unremarkable. Id. Over the next two years, Dr. Wani treated Rizzo for complaints of back pain, and consistently found stiffness, tenderness, and limited range of motion in the cervical and lumbar spine in his testing. (R.299-335). Nevertheless, on October 26, 2006, he found that Rizzo was capable of performing non-physical work. (R.324). In June 2007, Dr. Wani diagnosed Rizzo with chronic pain syndrome. (R.335). At the time of the hearing before ALJ Weiss, an up-to-date medical source statement was being sought from Dr. Wani. (R.354).

### e. Tasneem Sulaiman, M.D. - Consultive Physician

Dr. Sulaiman performed a consultive examination on Rizzo at the request of the Division of Disability Determination based on his complaints of neck and back pain. (R.278). After a barrage of tests, Dr. Sulaiman diagnosed exogenous obesity, neck pain with no radiculopathy, midback pain with no radiculopathy, hypertension, and asthma. (R.280-81). He provided a medical source statement which indicated that Rizzo had no difficultly sitting, standing, or walking. (R.281). He wrote that there seemed to be "not much" limitation to Rizzo's exertional capacity at that time. Id.

### f. Randall Schrager, M.D. - Surgeon

Dr. Schrager began treating Rizzo for a hernia on June 23, 2003, and recommended that the hernia be removed through surgical repair. (R.163). On July 24, 2003, Dr. Schrager successfully performed the surgery. (R.157-58). Unfortunately, the hernia was recurrent, and another surgery was required on March 4, 2004. (R.161-62). However, the hernia persisted, and a third repair surgery was performed on June 3, 2004 by Dr. Schrager. (R.159-60). Dr. Schrager saw Rizzo for the last time on October 27, 2004, for another issue concerning the hernia, and

5

referred Rizzo to a tertiary care specialist. (R.136-40). Dr. Schrager declined to provide an opinion concerning Rizzo's ability to perform work-related activities. (R.138).

### g. Phillip Barie, M.D. - Surgeon

Dr. Barie treated Rizzo for the recurrent hernia beginning on November 4, 2004, and advised Rizzo to undergo surgery. (R.229, 251). Dr. Barie performed the surgery on November 29, 2004, and declared that Rizzo would be disabled for two months following the surgery. (R.240-43, 251). On April 29, 2005, Dr. Barie stated that Rizzo had fully recovered from surgery and was medically cleared to return to work on light or modified duty at that time. (R.225). However, he restricted Rizzo to lifting no more than 25 pounds. (R.228). Dr. Barie also noted that Rizzo's impairments did not affect his ability to sit, stand, or walk. (R.231). On June 14, 2005, Dr. Barie noted that Rizzo's hernia had recurred and ordered him to lose twenty pounds. (R.233).

## C. The ALJ's Findings

ALJ Weiss denied Rizzo's disability claim in a written decision dated August 22, 2007. Based upon the evidence presented, ALJ Weiss found that, despite his impairments, Rizzo was able to perform sedentary work and was therefore not disabled within the meaning of § 216(i) and § 223(d) of the Social Security Act. ALJ Weiss's conclusion rested on several findings.

First, ALJ Weiss found that although Rizzo's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his testimony concerning the intensity, persistence, and limiting effects of the alleged symptoms was not credible. Second, ALJ Weiss noted that all of Rizzo's treating doctors indicate that he can work, and the only stated limitation is the amount of weight that he can lift. In addition, he found that Rizzo has had only

6

conservative treatment for his neck and back pain, and his most recent hernia operation was in the fall of 2005. Finally, ALJ Weiss found that considering Rizzo's age, education level, and work experience, there are jobs that exist in significant numbers in the national economy that he can perform.

As noted above, the Appeals Council denied Rizzo's request for review on June 26, 2008, making ALJ Weiss's decision the final decision of the Commissioner.

## II.  DISCUSSION

**A.     Standards of Review**

When reviewing the decision of the Commissioner, the Court may set aside the determination only if the decision was based on legal error or was not supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g); Janinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Brown v. Apfel, 174 F.3d 59, 61–62 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401(1971), and requires such relevant evidence that a reasonable person "might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

In addition, the Commissioner must accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques; results from frequent examinations; and is consistent "with the other substantial evidence in [the] case record." See Clark v. Commissioner of Soc. Sec., 143 F. 3d 115, 118 (2d Cir. 1998). When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must give "good reasons in his notice of determination or decision

7

for the weight he gives the claimant's treating source's opinion." Id.

In determining whether the Commissioner's findings are supported by substantial evidence, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). Further, the Court must keep in mind that "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark, 143 F.3d at 118. Therefore, when evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (quoting Valente v. Secretary of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). A reviewing court may "enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decisions of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.     Analytical Framework**

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A), a plaintiff must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004). The Act also provides that the impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.

Federal regulations set forth a five step analysis that the ALJ must follow when

evaluating disability claims, including:

> 1) whether the claimant is engaged in substantial gainful activity.
> 2) whether the claimant has a severe medically determinable physical or medical impairment which will impair the claimant from doing basic work activities
> 3) whether the claimant's severe medical impairment, based solely on medical evidence, is a limitation that is listed in Appendix 1 of the regulations.
> 4) an assessment of the claimant's residual functional capacity and ability to continue past relevant work despite severe impairment.
> 5) an assessment of the claimant's residual functional capacity along with age, education, and work experience. Here the burden shifts to the ALJ to show that the claimant can perform alternative work.

20 C.F.R.§§ 404.1520, 416.920.

When proceeding through this five step analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; and the claimant's educational background, age, and work experience. Mongeur, 722 F.2d at 1037.

**C.     Analysis**

As discussed above, ALJ Weiss determined that the Plaintiff was limited by his injuries and could not return to his past relevant work. However, based upon a residual functional capacity determination, ALJ Weiss concluded that despite the impairments, Rizzo was not disabled because he could still perform sedentary work. Rizzo contends that ALJ Weiss committed legal error by: (i) failing to fulfill his affirmative duty to obtain an updated medical source statement from Rizzo's treating neurologist, Dr. Wani; and (ii) failing to make an adequate credibility assessment of Rizzo's testimony.

**1.     The Affirmative Duty to Develop the Medical Record**

The Second Circuit has recognized that, given the non-adversarial nature of a hearing on

9

disability benefits, the Commissioner of Social Security is required to affirmatively develop the medical record before rendering a final decision, even when the claimant is represented by legal counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir. 1982)). The ALJ is required to obtain additional information from a treating physician if the evidence received from that physician is inadequate for making a determination of disability. 20 C.F.R. § 404.1512(e). Specifically, if the ALJ, after reviewing all of the evidence, feels that there is insufficient evidence to make a determination, pursuant to § 404.1512(e), he must then contact the treating physician. 20 C.F.R. § 404.1527(c)(3).

The Plaintiff's basic contention is that ALJ Weiss had a duty under 404.1512(e) to seek additional evidence because the evidence before him was insufficient to make a determination of disability. In particular, the Plaintiff argues that ALJ Weiss did not have sufficient medical evidence for a determination since an up-to-date evaluation from Dr. Wani concerning his assessment of the Plaintiff's disc herniations was never obtained. The Court disagrees.

ALJ Weiss had consistent medical evidence before him that was sufficient to make a determination of disability pursuant to 20 C.F.R. § 404.1527(c)(1). Dr. Sauter, Rizzo's neurologist, determined in March of 2005 that he had no work-related restrictions. (R.264-65). In fact, Dr. Sauter noted that Rizzo could return to work as early as April 11, 2005. (R.265). Dr. Wani, the neurologist from whom Rizzo solicited additional information, already advised him to consider "returning back to some type of occupation" because he was capable of doing non-physical work. (R.324). Dr. Sulaiman determined that Rizzo had no difficulty sitting, standing, or walking and found that his exertional capacity was not particularly limited. (R.281). Finally,

10

Dr. Barie, the surgeon who treated Rizzo for his hernias, cleared him to work as of April 29, 2005. (R.225). Dr. Barie's subsequent report, in which he found that Rizzo's hernia had recurred, did not indicate that he was incapable of returning to work. (R.233).

20 C.F.R. § 404.1527(c)(1) provides, in pertinent part, that "[i]f all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence." Id. Where, as here, a treating physician has indicated in an earlier report that a claimant is capable of performing sedentary or non-physical work, there is no need to further develop the medical record. Perez, 77 F.3d at 48. In particular, when the claimant seeks a retrospective medical assessment, and no evidence was shown at the hearing "to indicate that retrospective assessments would have revealed any useful information or that the physicians were prepared to undertake such assessment," an ALJ has a "complete medical history, and the evidence received from the treating physicians [is] adequate . . . to make a determination as to disability." Id.

The Court notes that there is no indication in the record that Dr. Wani is actually willing to provide an updated report on Rizzo's condition. Further, counsel had an opportunity at the hearing to explain the importance or utility of an updated report from Dr. Wani, but failed to give any compelling reason **as to** why such a report was necessary. (R.354-55, 359-60). Under the circumstances, the Court finds that ALJ Weiss had a complete medical record before him, and under § 404.1527(c)(1), was capable of making a valid determination of whether the Plaintiff was disabled.

    2.    **The Credibility of Plaintiff's Testimony**

Rizzo argues that ALJ Weiss erred by not detailing the specific factors required by the Commissioner's regulations and rulings in evaluating his credibility. Specifically, the Plaintiff cites Social Security Ruling 96-7p, which states in pertinent part that:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

According to the Plaintiff, ALJ Weiss failed to address Rizzo's allegations concerning his activities of daily living; the type, dosage and effects of medication; treatment other than medication; or any other measures taken to relieve pain.

During the hearing, ALJ Weiss probed the nature and severity of Rizzo's pain and elicited information about his daily activities; treatment other than medication; and any other measures he was taking to relieve pain. Rizzo testified that: he has difficulty sleeping and sitting in any one position for longer than 20 minutes; he spends most of his day reclining in a lounge chair; he has received massage therapy treatments; and he stretches and does exercises to relieve pain. However, ALJ Weiss found that the medical evidence and Rizzo's own testimony about his functional capacities were incongruous.

In particular, ALJ Weiss noted that each of the Plaintiff's treating physicians had noted that he was capable of performing non-physical work. After analyzing the medical evidence, ALJ Weiss implied that the weight of the evidence compelled his determination that Rizzo's testimony was not credible. In light of the proffered medical evidence it was reasonable for ALJ Weiss to conclude that Rizzo's subjective allegations about the nature and extent of his pain

12

were not fully credible.

Accordingly, the Court finds that ALJ Weiss did not commit legal error and that there was substantial evidence in the record supporting his conclusion that Rizzo was still capable of performing sedentary work and was therefore not disabled within the meaning of the Act.

### III. CONCLUSION

The Court has reviewed the submissions of the parties and the findings by the Commissioner and ALJ Weiss. For the reasons set forth above, it is hereby ordered that Plaintiff's motion for judgment on the pleadings is denied. The Commissioner's cross-motion for judgment on the pleadings is granted and the Plaintiff's complaint is dismissed. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
October 13, 2009

           */s/ Arthur D. Spatt*
           ARTHUR D. SPATT
           United States District Judge